IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHARKNINJA OPERATING LLC and<br>SHARKNINJA SALES COMPANY,<br><br>    Plaintiffs,<br><br>v.<br><br>DYSON, INC. and<br>DYSON TECHNOLOGY LIMITED,<br><br>    Defendants. | Civil Action No. 1:24-cv-12130<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

SharkNinja Operating LLC and SharkNinja Sales Company (collectively, "SharkNinja"), through their undersigned attorneys, alleges the following for their Complaint for Declaratory Judgment against Dyson, Inc. ("Dyson US") and Dyson Technology Limited ("Dyson UK") (collectively, "Dyson"):

**NATURE OF ACTION**

1. This is an action for declaratory judgment, seeking a declaration of noninfringement with respect to U.S. Patent Nos. 8,302,250 ("the '250 patent") (Ex. A); 8,117,712 ("the '712 patent") (Ex. B); 7,603,745 ("the '745 patent") (Ex. C); 8,444,731 ("the '731 patent") (Ex. D); and 8,100,999 ("the '999 patent") (Ex. E) (collectively, "the Dyson Patents") under the patent laws of the United States, 35 U.S.C. § 100 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. By this action, SharkNinja seeks to resolve an actual, immediate, and substantial controversy with Dyson as to the Dyson Patents.

**THE PARTIES**

2. Plaintiff SharkNinja Operating LLC is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Suite 100,

Needham, Massachusetts 02494.  SharkNinja has been based in Massachusetts for almost 20 years, moving its headquarters from Montreal, Canada, to Massachusetts in 2003.  Its current headquarters in Needham, Massachusetts, pictured below, houses over 750 employees, including research and development, sales, marketing, and corporate leadership personnel.  SharkNinja's Massachusetts headquarters is home to a vast number of its employees and operations.



3. Plaintiff SharkNinja Sales Company is a Delaware Corporation organized and existing under the laws of Delaware, having a principal place of business at 89 A Street, Suite 100, Needham, Massachusetts 02494.

4. Upon information and belief, Defendant Dyson, Inc. is a corporation organized and existing under the laws of the State of Illinois, having a principal place of business at 1330 W. Fulton Street, 5th Floor, Chicago, Illinois 60607.

5.       Upon information and belief, Defendant Dyson Technology Limited is a private limited company organized and existing under the laws of the United Kingdom, having a principal place of business at Tetbury Hill, Malmesbury SN16 0RP, United Kingdom.

6.       Upon information and belief, Dyson UK is the current assignee of each of the Dyson Patents.

7.       On May 24, 2024, Dyson US and Dyson UK filed a Complaint for Patent Infringement in the U.S. District Court for the Eastern District of Texas against SharkNinja, Inc., Omachron Alpha Inc., and Omachron Intellectual Property asserting infringement of the Dyson Patents by the named defendants.  *Dyson, Inc. & Dyson Tech. Ltd. v. SharkNinja, Inc, Omachron Alpha, Inc. & Omachron Intellectual Property Inc.*, Case No. 2:24-cv-00386 (E.D. Tex.) ("the EDTX Complaint") (Ex. F).  SharkNinja thus names Dyson US in this Complaint out of an abundance of caution to include all potential right-holders in the Dyson Patents.

## JURISDICTION AND VENUE

8.       This Court has subject matter jurisdiction over SharkNinja's Declaratory Judgment Complaint under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  As explained below, there is a definite, concrete, and substantial controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

9.       This Court has personal jurisdiction over Dyson, and venue is proper in this District under 28 U.S.C. §§ 1391 and/or 1400, because Dyson has engaged in patent enforcement activities directed at Massachusetts, and this declaratory judgment claim arises out of those efforts.  Dyson has consciously and purposely engaged in actions to avail itself of the jurisdiction of this District, including engaging in enforcement activities directed at residents of Massachusetts and having regularly and systematically transacted business in this District.

3

10. Dyson purposefully created minimum contacts with Massachusetts through its efforts to enforce the Dyson Patents and other patents against residents of Massachusetts. Dyson's purposeful actions include filing a lawsuit against SharkNinja, Inc., a holding company incorporated under the laws of the Cayman Islands with its principal executive office located in Needham, Massachusetts, for alleged infringement of the Dyson Patents ("the EDTX Complaint"). The EDTX Complaint accuses several SharkNinja vacuum products of infringement ("the Accused Products") and seeks, in part, a permanent injunction against the alleged infringing acts. As a holding company, SharkNinja, Inc. does not make, use, sell, offer to sell, or import the Accused Products. Instead, its indirect subsidiaries, SharkNinja Operating LLC and SharkNinja Sales Co., are responsible for such activities related to the Accused Products in the United States, and the persons responsible for directing those activities work out of the Needham, Massachusetts, facility. Dyson filed the EDTX Complaint knowing that its requested relief would have an impact in this District where management of the design, development, marketing and sales of the Accused Products occur, and where there are substantial sales, substantial offers for sale, and substantial promotional activity relating to the Accused Products. Thus, while Dyson published its allegations of infringement in Texas, Dyson directed those allegations at companies resident in the Commonwealth of Massachusetts.

11. Dyson also has availed itself of the District by bringing multiple claims in the District, including patent infringement claims against SharkNinja Operating LLC and SharkNinja Sales Company (*see SharkNinja Operating LLC et al. v. Dyson, Inc. et al.*, C.A. No. 1:23-cv-12372-ADB (D. Mass.) (counterclaims of patent infringement)) and false advertising and unfair business practice claims against SharkNinja and SharkNinja's predecessor—Euro-Pro Operating LLC (*see Dyson Inc. v. Euro-Pro Operating LLC*, C.A. No. 1:09-cv-11745-WGY (D. Mass.)

(claims of false advertising and unfair business practices), and *Euro-Pro Operating LLC v. Dyson Inc. et al.*, C.A. No. 1:14-cv-13720-ADB (D. Mass.) (counterclaims of false advertising and deceptive trade practices)).

12. The actions set forth above bear a direct connection to, and form the basis for, SharkNinja's claims against Dyson and have created a real, live, immediate, and justiciable case or controversy between SharkNinja and Dyson. Dyson has asserted rights under patents based on certain identified ongoing or planned activity of SharkNinja, and SharkNinja contends that it has the right to engage in the accused activity without license. The details relating to Dyson's actions to create this controversy are described in further detail in the Factual Background section below, which are incorporated by reference here.

13. Dyson has further engaged in activities directed at this District by regularly and systematically conducting business in this District. On information and belief, Dyson maintains a Service Center for its products at 162 Cordaville Road, Suite 160, Southborough, Massachusetts 01772 ("Southborough Service Center"), which it markets on its website at https://www.dyson.com/support/service-centers/southborough. On information and belief, the Southborough Service Center is a physical location operated by Dyson, as shown below:



14. On information and belief, customers can purchase Dyson vacuum products at the Southborough Service Center, including products that Dyson asserts practice the Dyson Asserted Patents.[2] Indeed, in the EDTX Complaint, for each asserted patent, Dyson alleges that "[t]o the extent applicable, Dyson has complied with 35 U.S.C. § 287(a)." *See* Ex. F, ¶¶ 59, 72, 84, 97, 110.

15. On information and belief, customers also can purchase Dyson products that, according to Dyson, practice the Dyson Asserted Patents throughout the District, including at stores such as Best Buy (in at least the cities of Boston, Braintree, Mansfield, Dedham, Watertown, Everett, Dorchester, and Saugus), Target (in at least the cities of Boston, Dorchester, Somerville, Cambridge, Everett, Revere, Medford, Watertown, Quincy, Saugus, Burlington, and Woburn), Costco (in at least the cities of Avon, Danvers, Dedham, Everett, Waltham, and West Springfield), and Walmart (in at least the cities of Lynn, Saugus, Quincy, Salem, Weymouth, Danvers, Avon, and Northborough).

---

[1] *See* https://www.facebook.com/DysonServiceCenterMarlborough/photos/386980615067233 (last accessed Aug. 9, 2024).

[2] *See* Ex. G (*available at* https://www.dyson.com/content/dam/dyson/inside-dyson/patents/Product%20Marking%20Report%20US%20V2.pdf) (last accessed Aug. 9, 2024).

16. Dyson has thus established sufficient minimum contacts with the District of Massachusetts such that Dyson is subject to specific personal jurisdiction for this Complaint. Further, the exercise of personal jurisdiction based on these contacts does not offend traditional notions of fairness and substantial justice.

17. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400, including because, under Federal Circuit law, venue in declaratory judgment actions for noninfringement of patents is determined under the general venue statute, 28 U.S.C. § 1391.

18. Under 28 U.S.C. § 1391(b)(1), venue is proper in any judicial district where a defendant resides. An entity with the capacity to sue and be sued, such as Dyson, is deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question under 28 U.S.C. § 1391(c). As discussed above, Dyson is subject to personal jurisdiction with respect to this action, and thus, for the purposes of this action, venue is proper under 28 U.S.C. § 1391(b)(1). In addition, venue is proper for Dyson UK in any District, as a foreign defendant. 28 U.S.C. § 1391(c)(3).

19. For the reasons set forth above, venue is also proper under 28 U.S.C. § 1391(b)(2), given that a substantial part of the events or omissions giving rise to the claim occurred and/or a substantial part of property that is the subject of the action is situated in this District.

## FACTUAL BACKGROUND

20. Plaintiff SharkNinja is a worldwide leader and innovator in the housewares industry. It offers more than 21 categories of products that include vacuum cleaners, hair care products, and kitchen appliances. SharkNinja has a rich history of providing "five star" products to consumers at affordable prices.

21. SharkNinja devotes significant resources in the United States—primarily in this District—to its research and development and engineering, which has resulted in, among other things, development of numerous successful and innovative products and product features. SharkNinja's success centers around its advanced engineering and innovation capabilities, coupled with its deep understanding of consumer needs, enabling SharkNinja to solve consumer problems that others do not see or are unable to solve. Indeed, among other things, SharkNinja's efforts have resulted in the development of its Shark® vacuum cleaner products that are known for their quality and affordability, including the products that Dyson contends infringe the Dyson Patents. SharkNinja's innovative products are sold by retailers as well as through direct marketing to consumers through the use of infomercials and on the Internet.

22. On May 24, 2024, Dyson, Inc. and Dyson Technology Limited filed the EDTX Complaint against SharkNinja, Inc., Omachron Alpha Inc., and Omachron Intellectual Property Inc. asserting infringement of five patents by the following SharkNinja products: U.S. Patent No. 8,302,250 ("the '250 patent") against the Detect Pro, Clean & Empty Cordless Stick Vacuum, and Rocket Pro DLX Corded Stick ("the '250 Accused Products"); U.S. Patent No. 8,117,712 ("the '712 patent") against the Vertex Pro Cordless, Stratos Cordless, Pet Cordless, Pet Plus Cordless, and Shark Cordless Pro ("the '712 Accused Products"); U.S. Patent No. 7,603,745 ("the '745 patent") against the Detect Pro, Clean & Empty Cordless Stick Vacuum, Vertex Pro Cordless, Stratos Cordless, and Shark Cordless Pro ("the '745 Accused Products"); U.S. Patent No. 8,444,731 ("the '731 patent") against the Pet Cordless, Pet Plus Cordless, Rocket Cordless, and Rocket Pro Cordless ("the '731 Accused Products"); and U.S. Patent No. 8,100,999 ("the '999 patent") against the Shark Vandvac ("the '999 Accused Products") (collectively, "the Accused Products").

23. The EDTX Complaint seeks, *inter alia*, a judgment that the named defendants have infringed and continue to infringe one or more claims of the Dyson Patents, a permanent injunction against the alleged infringing acts, and an award of all damages sustained by Dyson as a result of the alleged infringing acts.

24. The plaintiffs in the present Complaint—SharkNinja Operating LLC and SharkNinja Sales Company—are indirect subsidiaries of named defendant in the EDTX Complaint, SharkNinja, Inc., a holding company incorporated under the laws of the Cayman Islands, with its principal executive office located in Needham, Massachusetts.

25. SharkNinja Operating LLC, which is headquartered in this District, is responsible for designing, making, marketing, and directing the sales of the Accused Products.

26. SharkNinja Sales Company, which is also headquartered in this District, sells the Accused Products.

27. None of the Accused Products have infringed or do infringe, directly or indirectly, any claim of the Dyson Patents, either literally or under the doctrine of equivalents. SharkNinja has at all times acted in good faith with respect to Dyson's alleged patent rights.

**COUNT I**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '250 PATENT**

28. SharkNinja incorporates the preceding paragraphs as if fully set forth herein.

29. SharkNinja has not been making, using, selling, offering to sell, importing, or supplying any product that contains each and every limitation of any claim of the '250 patent.

30. SharkNinja has not infringed and does not infringe any claim of the '250 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), 271(b), 271(c), or 271(f)(1), as alleged in the EDTX Complaint, or any other provision of § 271, including but not

limited to through SharkNinja's making, using, selling, offering for sale, importing, and/or supplying the '250 Accused Products.

31. For example, the Detect Pro (which is compared to the '250 patent in Exhibit 6 to the EDTX Complaint) (attached hereto as Exhibit H) does not include "a cyclonic separating apparatus arranged in communication with the suction conduit separating dirt and dust from the airflow," as claimed in the '250 patent. To the contrary, the Detect Pro achieves separation of dirt and dust from the airflow through a filter.

32. Dyson's patent infringement allegations regarding the '250 patent have caused and, unless restrained and enjoined, will continue to cause irreparable harm to SharkNinja that cannot be adequately quantified or compensated by monetary damages alone and for which there is no adequate remedy at law.

33. SharkNinja is entitled to a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the '250 patent is not infringed by SharkNinja or any products accused of infringement in the EDTX Complaint, and enjoining Dyson from continuing its patent assertion campaign relating to the '250 patent against SharkNinja in this District and elsewhere.

34. An actual case or controversy exists between SharkNinja and Dyson based on Dyson's wrongful assertion of patent infringement against SharkNinja, forming a justiciable controversy between the parties that is ripe for determination as to the '250 patent.

35. Dyson's conduct as alleged herein constitutes an exceptional case under 35 U.S.C. § 285, entitling SharkNinja to the attorneys' fees and costs incurred in this action to vindicate its legal rights and to restore its ability to compete fairly.

**COUNT II**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '712 PATENT**

36. SharkNinja incorporates the preceding paragraphs as if fully set forth herein.

37. SharkNinja has not been making, using, selling, offering to sell, importing, or supplying any product that contains each and every limitation of any claim of the '712 patent.

38. SharkNinja has not infringed and does not infringe any claim of the '712 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), 271(b), 271(c), or 271(f)(1), as alleged in the EDTX Complaint, or any other provision of § 271, including but not limited to through SharkNinja's making, using, selling, offering for sale, importing, and/or supplying the '712 Accused Products.

39. For example, the Vertex Pro Cordless (which is compared to the '712 patent in Exhibit 7 to the EDTX Complaint) (attached hereto as Exhibit I) does not include "the separator and the body being releasably connected together about a chamber in the airflow path downstream of the outlet duct and which is formed partly by the body and partly by the separator, the chamber housing a filter which is located upstream of the fan and motor," as claimed in the '712 patent. To the contrary, the filter of the Vertex Pro Cordless identified in Exhibit 7 to the EDTX Complaint is housed entirely in the identified "separator," and no "chamber" is "formed partly by the body and partly by the separator."

40. Dyson's patent infringement allegations regarding the '712 patent have caused and, unless restrained and enjoined, will continue to cause irreparable harm to SharkNinja that cannot be adequately quantified or compensated by monetary damages alone and for which there is no adequate remedy at law.

41. SharkNinja is entitled to a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the '712 patent is not infringed by SharkNinja or any products accused of infringement in the EDTX Complaint, and enjoining Dyson from continuing its patent assertion campaign relating to the '712 patent against SharkNinja in this District and elsewhere.

42. An actual case or controversy exists between SharkNinja and Dyson based on Dyson's wrongful assertion of patent infringement against SharkNinja, forming a justiciable controversy between the parties that is ripe for determination as to the '712 patent.

43. Dyson's conduct as alleged herein constitutes an exceptional case under 35 U.S.C. § 285, entitling SharkNinja to the attorneys' fees and costs incurred in this action to vindicate its legal rights and to restore its ability to compete fairly.

## COUNT III
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '745 PATENT

44. SharkNinja incorporates the preceding paragraphs as if fully set forth herein.

45. SharkNinja has not been making, using, selling, offering to sell, importing, or supplying any product that contains each and every limitation of any claim of the '745 patent.

46. SharkNinja has not infringed and does not infringe any claim of the '745 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), 271(b), 271(c), or 271(f)(1), as alleged in the EDTX Complaint, or any other provision of § 271, including but not limited to through SharkNinja's making, using, selling, offering for sale, importing, and/or supplying the '745 Accused Products.

47. For example, the Detect Pro (which is compared to the '745 patent in Exhibit 8 to the EDTX Complaint) (attached hereto as Exhibit J) does not include "a cleaner head having a driveable agitator configured to be automatically driven each time a user switches on the motor and capable of being de-energized while the motor is energized subsequent to the agitator thus being automatically driven," as claimed in the '250 patent. To the contrary, the agitator of the Detect Pro is not capable of being "de-energized," or turned off, "while the motor is energized."

48. Dyson's patent infringement allegations regarding the '745 patent have caused and, unless restrained and enjoined, will continue to cause irreparable harm to SharkNinja that cannot

be adequately quantified or compensated by monetary damages alone and for which there is no adequate remedy at law.

49. SharkNinja is entitled to a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the '745 patent is not infringed by SharkNinja or any products accused of infringement in the EDTX Complaint, and enjoining Dyson from continuing its patent assertion campaign relating to the '745 patent against SharkNinja in this District and elsewhere.

50. An actual case or controversy exists between SharkNinja and Dyson based on Dyson's wrongful assertion of patent infringement against SharkNinja, forming a justiciable controversy between the parties that is ripe for determination as to the '745 patent.

51. Dyson's conduct as alleged herein constitutes an exceptional case under 35 U.S.C. § 285, entitling SharkNinja to the attorneys' fees and costs incurred in this action to vindicate its legal rights and to restore its ability to compete fairly.

## COUNT IV
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '731 PATENT

52. SharkNinja incorporates the preceding paragraphs as if fully set forth herein.

53. SharkNinja has not been making, using, selling, offering to sell, importing, or supplying any product that contains each and every limitation of any claim of the '731 patent.

54. SharkNinja has not infringed and does not infringe any claim of the '731 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), 271(b), 271(c), or 271(f)(1), as alleged in the EDTX Complaint, or any other provision of § 271, including but not limited to through SharkNinja's making, using, selling, offering for sale, importing, and/or supplying the '731 Accused Products.

55. For example, the Shark Pet Cordless (which is compared to the '731 patent in Exhibit 9 to the EDTX Complaint) (attached hereto as Exhibit K) does not include a "cyclonic

separator" with "a plurality of second cyclones arranged in parallel with one another and located downstream of the or each first cyclone." To the contrary, the identified "cyclonic separator" in Exhibit 9 to the EDTX Complaint comprises a single cyclone.

56. Dyson's patent infringement allegations regarding the '731 patent have caused and, unless restrained and enjoined, will continue to cause irreparable harm to SharkNinja that cannot be adequately quantified or compensated by monetary damages alone and for which there is no adequate remedy at law.

57. SharkNinja is entitled to a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the '731 patent is not infringed by SharkNinja or any products accused of infringement in the EDTX Complaint, and enjoining Dyson from continuing its patent assertion campaign relating to the '731 patent against SharkNinja in this District and elsewhere.

58. An actual case or controversy exists between SharkNinja and Dyson based on Dyson's wrongful assertion of patent infringement against SharkNinja, forming a justiciable controversy between the parties that is ripe for determination as to the '731 patent.

59. Dyson's conduct as alleged herein constitutes an exceptional case under 35 U.S.C. § 285, entitling SharkNinja to the attorneys' fees and costs incurred in this action to vindicate its legal rights and to restore its ability to compete fairly.

## COUNT V
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '999 PATENT

60. SharkNinja incorporates the preceding paragraphs as if fully set forth herein.

61. SharkNinja has not been making, using, selling, offering to sell, importing, or supplying any product that contains each and every limitation of any claim of the '999 patent.

62. SharkNinja has not infringed and does not infringe any claim of the '999 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), 271(b), 271(c), or

271(f)(1), as alleged in the EDTX Complaint, or any other provision of § 271, including but not limited to through SharkNinja's making, using, selling, offering for sale, importing, and/or supplying the '999 Accused Products.

63. For example, the Shark Wandvac (which is compared to the '999 patent in Exhibit 10 to the EDTX Complaint) (attached hereto as Exhibit L) does not include "a second catch for releasing the collecting chamber from the separator" or a "second releasing means," as claimed in the '999 patent. To the contrary, the "second catch" identified in Exhibit 10 to the EDTX Complaint does not release "the collecting chamber from the separator." Furthermore, the "second releasing means" identified in Exhibit 10 to the EDTX Complaint does not include the structure corresponding the "second releasing mean" disclosed in the '999 patent or the equivalents.

64. Dyson's patent infringement allegations regarding the '999 patent have caused and, unless restrained and enjoined, will continue to cause irreparable harm to SharkNinja that cannot be adequately quantified or compensated by monetary damages alone and for which there is no adequate remedy at law.

65. SharkNinja is entitled to a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the '999 patent is not infringed by SharkNinja or any products accused of infringement in the EDTX Complaint, and enjoining Dyson from continuing its patent assertion campaign relating to the '999 patent against SharkNinja in this District and elsewhere.

66. An actual case or controversy exists between SharkNinja and Dyson based on Dyson's wrongful assertion of patent infringement against SharkNinja, forming a justiciable controversy between the parties that is ripe for determination as to the '999 patent.

67. Dyson's conduct as alleged herein constitutes an exceptional case under 35 U.S.C. § 285, entitling SharkNinja to the attorneys' fees and costs incurred in this action to vindicate its legal rights and to restore its ability to compete fairly.

## PRAYER FOR RELIEF

WHEREFORE, SharkNinja respectfully requests that this Court enter judgment in its favor as follows:

(a) Declaring that SharkNinja has not infringed and does not infringe any claim of the Dyson Patents, either literally or under the doctrine of equivalents;

(b) Declaring this to be an exceptional case and awarding SharkNinja its costs, expenses, and disbursements in this action, including reasonable attorney fees, pursuant to 35 U.S.C. § 285; and

(c) Awarding SharkNinja such further and additional relief that this Court deems just and proper.

## JURY DEMAND

SharkNinja requests a trial by jury on all issues so triable.

Dated: August 19, 2024

|  |  |
|---|---|
| OF COUNSEL:<br><br>Brian A. Rosenthal (*pro hac vice forthcoming*)<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 351-4000<br><br>Mark Reiter (*pro hac vice forthcoming*)<br>Gibson, Dunn & Crutcher LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, TX 75201<br>(214) 698-3400 | /s/ Joseph J. Mueller<br><br>Joseph J. Mueller<br>Rachel S. Bier<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>60 State Street<br>Boston, Massachusetts 02109<br>(617) 526-6000<br>joseph.mueller@wilmerhale.com<br>rachel.bier@wilmerhale.com<br><br>Todd C. Zubler  (*pro hac vice forthcoming*)<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>2100 Pennsylvania Avenue NW<br>Washington, DC 20037<br>(202) 663-6000<br>todd.zubler@wilmerhale.com<br><br>Omar A. Khan  (*pro hac vice forthcoming*)<br>Jeffrey A. Dennhardt  (*pro hac vice forthcoming*)<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>(212) 230-8800<br>omar.khan@wilmerhale.com<br>jeffrey.dennhardt@wilmerhale.com<br><br>*Attorneys for Plaintiffs*<br>*SharkNinja Operating LLC and*<br>*SharkNinja Sales Company* |